Jeffrey L. Bornstein (State Bar No. 99358)
Luke G. Anderson (State Bar No. 210699)
K&L Gates LLP
55 Second Street, 17th Floor
San Francisco, CA 94105
Telephone: (415) 882-8200
Facsimile:  (415) 882-8220

Barry M. Hartman, *Admitted Pro Hac Vice* (DC Bar No. 291617)
Christopher R. Tate, *Admitted Pro Hac Vice* (PA Bar No. 205510)
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 778-9000
Facsimile:   (202) 778-9100

Attorneys for Defendant
JOHN J. COTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>JOHN J. COTA,<br>     and<br>FLEET MANAGEMENT LIMITED,<br><br>                    Defendants. | Case No.  CR 08-0160 SI<br><br>**DEFENDANT JOHN J. COTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER CHARGES AGAINST DEFENDANT FLEET MANAGEMENT, INC.**<br><br>Date:    September 22, 2008<br>Time :   11:00 a.m.<br>Judge:   Honorable Susan Illston<br><br>Speedy Trial Act; Excludable Time through Disposition, 18 U.S.C. § 3161(h)(1)(F) |

///

///

///

///

///////

1.

**DEFENDANT JOHN J. COTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER CHARGES AGAINST DEFENDANT FLEET MANAGEMENT, INC.**
CR 08-0160 SI

I. INTRODUCTION

Allowing the government to try both Captain Cota and Fleet in the same courtroom at the same time would prejudice Captain Cota, because it would force him to face two prosecutors at once: the United States and Fleet Management, Inc. ("Fleet"), the latter having considerably more latitude to present specious, biased and prejudicial arguments to the jury than the government. Moreover, a joint trial, given Fleet's apparent insistence on pursuing a defense involving the facts surrounding the licensure of Captain Cota, would subject the jury to evidence and arguments irrelevant and prejudicial to Captain Cota's defense of the Clean Water Act and Migratory Bird Treaty Act charges and would thereby undermine the severance previously ordered by this Court. For these reasons, this Court should sever the charges pending against Captain Cota under the Clean Water Act and the Migratory Bird Act from those pending against Fleet and thereby permit Captain Cota to proceed expeditiously to trial on these negligence counts.

II. **FACTUAL BACKGROUND**

The case against Captain Cota and Fleet arises out of the government's investigation into the allision of the M/V COSCO BUSAN with the San Francisco Bay Bridge on November 7, 2007. Originally, on March 17, 2008, the government filed an Information against Captain Cota, alleging misdemeanor violations of the Federal Water Pollution Control Act ("Clean Water Act") and the Migratory Bird Treaty Act based on his alleged negligence while aboard the COSCO BUSAN on the day of the incident. On April 22, 2008, a grand jury returned a superseding indictment against Captain Cota adding two counts of making a false statement in violation of 18 U.S.C. § 1001(a) based on Captain Cota's medical examinations in January 2006 and 2007. These charges allege that Captain Cota failed to disclose material medical information concerning his prescription medications to a doctor during the licensing renewal process months and years before this incident. Importantly, there was no allegation that these alleged false statements had anything to do with the allision.

On July 21, 2008, this Court granted Captain Cota's motion to sever the false statement

2.

counts from the Clean Water Act and Migratory Bird Treaty Act counts, on the grounds that the alleged false statements were "not of similar character or based on the same act or transaction as defendant's alleged negligence" in connection with the allision and that the Indictment did not allege that "that the alleged false statements and negligent acts [were] <u>part of a common scheme or plan</u>." *United States v. Cota*, No. 08-CR-0160, slip op. at 2 (N.D. Cal. filed July 21, 2008) (emphasis added). Accordingly, the false statement counts were severed from those charging violations of the Clean Water Act and Migratory Bird Treaty Act and these latter counts were set for trial.

The next day, July 22, 2008, the government filed the Second Superseding Indictment, adding Fleet as a defendant (the "Second Indictment "). In the Second Indictment, the government realleged without change the false statement charges against Captain Cota. Significantly, however, even though it amended and modified some of the allegations it brought under the Clean Water Act by adding allegations against Fleet, it did not add any language alleging any connection between Captain Cota's alleged negligence and his alleged false statements.

The Second Indictment did add six new counts against Fleet alone, three charging obstruction of justice under 18 U.S.C. § 1519 and three charging false statements to government investigators under 18 U.S.C. § 1001(a). According to those counts, Fleet employees falsified or destroyed essential vessel documents such as passage plans, and deliberately lied to federal investigators after the allision. Importantly, Captain Cota is not named in **any** of the six newly pled counts nor are there **any** allegations he played any part whatsoever in misconduct alleged.[1]

On August 14, 2008, Fleet filed a Status Conference Statement with this Court. As is discussed further below, in this filing, Fleet revealed that one of its primary strategies in defending against the Clean Water Act and Migratory Bird Treaty charges will be to present salacious, speculative, and baseless "evidence" regarding Captain Cota's past conduct and his alleged lack of sobriety on the day of the allision. The point of this character assassination will

---

[1] The previously filed Severance Order is still in effect.

3.

**DEFENDANT JOHN J. COTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER CHARGES AGAINST DEFENDANT FLEET MANAGEMENT, INC.**
CR 08-0160 SI

be to attempt to convince the jury that despite the conduct of its crew, Fleet bears no responsibility for the incident. Status Conference Statement ("Status Conf. Stmt.") at 7. Fleet intends to present "evidence" that Captain Cota was under the influence of drugs on the morning of the incident, *id*. at 7, even though he tested negative for alcohol and drugs immediately following it. It will argue that Captain Cota suffered from drug abuse and instability. *Id.* at 2-5. Fleet also intends to prove that Captain Cota suffered from medical conditions that rendered him unfit for duty. *Id.* at 4-5. Fleet intends to use this argument to demonstrate that Captain Cota never should have been licensed in the first place and that therefore, the government is ultimately responsible for this accident.

In ordering severance, this Court has already concluded that evidence relating to the false statement charges against Captain Cota-including evidence about his medical conditions and prescription medications- is irrelevant to those alleging violations of the Clean Water Act and the Migratory Bird Treaty Act. Yet it is this same irrelevant and highly prejudicial and inflammatory evidence that Fleet now says it will attempt to use at trial. Severance is necessary to preserve Captain Cota's right to be tried on evidence properly admissible against him on the severed claims and not to be unfairly tarnished with unfair prejudicial innuendos and unsubstantiated allegations this Court has already concluded bear no relation to his conduct on the day of the incident.

### III. ARGUMENT

#### A. Legal Standard

Rule 14 of the Federal Rules of Criminal Procedure permits the trial court to order separate trials for defendants where the typical arrangement of joint trials would prejudice a defendant. Fed. R. Crim. P. 14(a); *United States v. Tootick*, 972 F.2d. 1078 (9th Cir. 1991). While inconsistent defenses alone typically do not create the necessary prejudice, severance is required when there is a "considerable risk that each defendant, ably throwing pot-shots at the other, would make the government's case for it," *United States v. Green*, 324 F.Supp.2d 311, 325 (D. Mass. 2004). Antagonistic defenses also raise a concern that a defendant will be forced to

4.

defend against extraneous or scandalous charges that would not be permitted in a separate trial. As the Ninth Circuit stated in *Tootick*:

> Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant. In order to zealously represent his client, each codefendant's counsel must do everything possible to convict the other defendant. The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor. Opening statements, as in this case, can become a forum in which gruesome and outlandish tales are told about the exclusive guilt of the "other" defendant.

*Tootick*, 952 F.2d at 1082.

Thus, severance is appropriate where defendant shows that, if a jury accepts his co-defendant's theory, it cannot acquit him. In *Tootick*, for example, two defendants stood trial for assault after a man was stabbed and hit by an automobile. The first defendant, Frank, presented evidence that the other defendant, Tootick, acted alone in stabbing the victim. Tootick did not testify, but his lawyer presented evidence that Tootick was too intoxicated to even remain conscious during the episode, much less carry out the attack on his own. Given these conflicting defenses, if the jury believed Frank, it could not acquit Tootick. Based on these facts, the Ninth Circuit ruled that the trial court had abused its discretion in denying the severance motion. In addition, the court pointed out that Tootick's counsel referred to Frank seventy-two times in his opening statement, making unsubstantiated allegations that a prosecutor would never have been permitted to make. *Id.* at 1084. For his part, Frank's counsel used his cross-examination of government witnesses to "reiterate the prosecution's charges against Tootick and to emphasize Tootick's guilt." *Id.* Given this mutual finger-pointing by the defendants, the Ninth Circuit noted that it was unsurprising that the prosecutor simply stood back and "rested on the logical impossibility of accepting both defendants at their word." *Id.* at 1085. Moreover, due to the massive amount of prejudicial tit-for-tat that had occurred during the trial, the Ninth Circuit held that even "a set of lengthy and accurate instructions delivered at the end of the trial [will be] received by a jury that has already been numbed by the conflicting defenses and is ready to

5.

believe nobody." *Id.* at 1085-86. Accordingly, the court held that the trial "resulted in manifest prejudice." *Id.* at 1086.

The Ninth Circuit's decision in *United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999) is also instructive. In that case, two defendants, Mayfield and Gilbert, were charged with possession of cocaine with intent to distribute. A confidential informant told police that Mayfield was in an apartment preparing rock cocaine. When police executed a search warrant based on the informant's information, they found Gilbert in the apartment; Mayfield ran out the back door. Gilbert, while detained by police, told them that the man outside was Mayfield and that he was "the main man." Mayfield was later caught and arrested. At trial, Mayfield argued that the use of Gilbert's statement would violate his Confrontation Clause rights. The court agreed and admitted the statement only after redacting Mayfield's name. However, on cross-examination of the detaining officer, Gilbert's counsel made it clear that Gilbert had stated he was working for someone else, "the main man," and proceeded during his closing argument to assert that Mayfield was the "main man" in Gilbert's statement. Further, despite the Court's instruction not to discuss the confidential informant, Gilbert's attorney questioned a police officer in order to establish that the informant had only mentioned that Mayfield was inside the apartment, and that the search warrant only named Mayfield and not Gilbert. The Ninth Circuit held that severance should have been granted because "Gilbert's counsel used every opportunity to introduce impermissible evidence against Mayfield—evidence that could not have been admitted against Mayfield had he been tried separately" *Id.* at 905.

### B.  **The Focus of Fleet's Defense Makes It Logically Impossible For A Jury To Believe Fleet and Simultaneously Acquit Captain Cota**

Fleet's defense of the Clean Water Act and Migratory Bird Treat Act charges turns on demonstrating to the jury that Captain Cota is soley to blame for the incident aboard the COSCO BUSAN. The Status Conference Statement leaves no doubt that, while it will attempt to shift the blame onto a variety of parties, Fleet will focus primarily on savaging the character and conduct of Captain Cota. Fleet expressly states that the question of whether the crew was negligent must

6.

be viewed "in light of [Captain] Cota's [alleged] medical condition and drug use." Status Conf. Stmt. at 7. Fleet further states that while "the Government has asserted that the crew should have stopped Cota from navigating on an allision course, the question remains-did Cota display observable evidence that he was incapacitated by drugs." *Id*. at 7. It will be "up to Fleet" to develop "not only the linkage between his drug use and loss of situational awareness but also the fact that the drugs in question did not cause Cota to display an outwardly sign of intoxication" *Id*. In other words, Fleet's defense will be premised on proving that Cota was incapable of piloting the ship and therefore negligent while at the same time arguing that there was no visible evidence of his inability and that the crew is thus blameless for failing to stop him.[2] Severance should be granted on this basis alone.

Moreover, permitting the charges against Captain Cota and Fleet to be tried together will undoubtedly result in the "manifest prejudice" to be avoided under the Ninth Circuit's decision in *Tootick*. Fleet's proposed defense relies on salacious and unfounded accusations of past drug abuse, drug use on the morning of the incident, and a "history of piloting accidents due to a 'loss of situational awareness'". . Status Conf. Stmt. 2, 4, 7. None of these accusations has any basis in fact and at trial it will be part of Cota's defense to rebut them. The government, for its part, has never presented any of these theories in its Indictment or elsewhere. Nonetheless, the government, just as in *Tootick*, will be able to just passively sit back while Fleet presents this uncorroborated and prejudicial "evidence", and then point out to the jury that, given the antagonistic and conflicting nature of Fleet's and Captain Cota's defense, someone must be lying. Tootick, 952 F. 2d 1085. Thus there is a "considerable risk" that Captain Cota and Fleet "ably throwing pot-shots at each other" will "make the government's case for it". *United States v. Greene*, 324 F. Supp. 311, 325 (D. Mass. 2004). Severance is therefore warranted.

///

---

[2] Captain Cota was not under the influence of any drug or alcohol but that fact is not pertinent to Fleet's hyperbole.

7.

**DEFENDANT JOHN J. COTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER CHARGES AGAINST DEFENDANT FLEET MANAGEMENT, INC.**
CR 08-0160 SI

### C. Fleet Seeks To Introduce Evidence Against Captain Cota That Would Not Be Presented If Captain Cota Were Tried Separately

Severance should also be granted because if Captain Cota and Fleet are tried together, Fleet will rely on evidence that would not be permitted in a separate trial. In its July 21, 2008 Order, this Court granted Captain's Cota's motion to sever the counts based on his alleged false statement for failing to provide information regarding current medications in connection with the physical examinations required by his pilot's license in 2006 and 2007. This Court determined that, as alleged in the indictment, those statements were not of a similar character nor were they based on the same transaction as his alleged negligence in connection with the November 7 allision. The allegations in the new indictment do not alter this finding. As a result, in the trial of the counts brought under the Clean Water Act and Migratory Bird Treat Act the government will be precluded from presenting evidence relating to those statements. That should include evidence of Captain Cota's medical conditions and prescription medications. Fleet, however, does not feel bound by that finding. As a theory of its defense, Fleet claims that the Coast Guard and California Board of Pilot Commissioners were negligent in licensing Captain Cota, given his alleged lack of fitness for duty based on Captain Cota's medical conditions and prescriptions. Fleet apparently intends to rely on, for example, the alleged testimony of Dr. Robert Bourgeois at the NTSB hearings that Captain Cota should not have been licensed as a pilot. Status Conf. Stmt. at 2. Fleet also intends to use evidence relating to Captain Cota's medical condition to show that "the Coast Guard failed in its mission to prevent an unfit pilot from piloting the Cosco Busan". *Id*. at 4. Fleet <u>expressly</u> acknowledges that the government would not be able to present this evidence at trial. It therefore claims that "[s]ince the charges against Cota regarding his drug use were severed for trial," it will up to Fleet to develop and rely on evidence of Captain Cota's past drug use, the effect of those drugs on him and the crew's lack of knowledge of those effects. Status Conf. Stmt. 7.

Thus, there is no doubt that if the charges against Fleet and Captain Cota are tried together, Fleet will take "every opportunity" to introduce evidence relating to Captain Cota's

8.

medical conditions and prescription medications inflammatory and highly prejudicial evidence that the government would otherwise be barred from presenting. *See Tootick*, 952 F.2d at 1082. Therefore, because under these circumstances, "'the decisive evidence of guilt' will be "'provided by a co-defendant'", severance is required. *Mayfield*, 189 F.3d at 907 (*quoting Zafiro v. United States*, 506 U.S. 534, 543 (1993) (Stevens, J., concurring)).

### IV. CONCLUSION

Because a joint trial would result in manifest prejudice to Captain Cota, this Court should order separate trials for Captain Cota and Fleet on the counts charging violations of the Clean Water Act and the Migratory Bird Treaty Act.

Respectfully submitted,

K&L GATES LLP

Dated:  August 22, 2008      By:   /s/ Jeffrey L. Bornstein
                                   Jeffrey L. Bornstein, Esq.
                                   Luke G. Anderson, Esq.
                                   Barry M. Hartman, Esq., *Admitted Pro Hac Vice*
                                   Christopher R. Tate, Esq., *Admitted Pro Hac Vice*

                                   Attorneys for Defendant
                                   JOHN J. COTA

9.

# PROOF OF SERVICE

I am employed in the County of San Francisco, State of California by a member of the Bar of this Court, at whose direction this service was made. I am over the age of 18 and not a party to the within action. My business address is 55 Second Street, Suite 1700, San Francisco, CA 94105. On August 22, 2008, I served the document(s) described as:
**DEFENDANT JOHN J. COTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER CHARGES AGAINST DEFENDANT FLEET MANAGEMENT, INC.**

on the parties to this action named on the attached service list by the method described below.

   (BY PERSONAL SERVICE) I caused a true and correct copy of said document(s) to be served by hand to the addressee(s) listed above, with the name and address of the person served shown on the envelope.

   (BY OVERNIGHT DELIVERY) I enclosed a true and correct copy of said document(s) in an envelope/package provided by an overnight delivery carrier addressed to the addressee(s) listed above, sealed it, and placed it for collection and overnight delivery following the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP. I am readily familiar with the firm's practice of collecting and processing correspondence for overnight delivery. On the same day that correspondence is placed for collection and overnight delivery, it is collected by an overnight delivery carrier. Delivery fees are pre-paid or provided for in accordance with the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP.

**X** (BY ELECTRONIC TRANSMISSION) I transmitted a true and correct copy of said document(s) by electronic mail to the offices of the addressee(s). I did not receive, within a reasonable time after the transmission, any message or other indication that the transmission was unsuccessful.

   (BY FACSIMILE) I transmitted a true and correct copy of said document(s) by facsimile to the offices of the addressee(s). Upon completion of the facsimile transmission, a transmission report was issued showing the transmission was complete and without error.

   (BY U.S. MAIL) I enclosed a true and correct copy of said document(s) in an envelope addressed to the addressee(s) listed above and placed it for collection and mailing following the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service with postage fully prepaid at San Francisco, California.

Executed on August 22, 2008 at San Francisco, California.

I declare under penalty of perjury that the foregoing is true and correct.

                                    /s Michelle Crawford

# SERVICE LIST

Stacey Geis, Esq.
Assistant United States Attorney
U.S. Attorney's Office
450 Golden Gate, 11th Floor
San Francisco, CA 94102
Fax: (415) 436-7234

Richard Udell
U.S. Department of Justice, Environment Crimes Section
PO Box 23985
Washington, DC 20026
Fax: (202) 305-0396

Marc R. Greenberg, Esq.
Keesal, Young & Logan
400 Oceangate
P.O. Box 1730
Long Beach, CA  90801-1730
Fax: (562) 436-7416

11.

**DEFENDANT JOHN J. COTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER CHARGES AGAINST DEFENDANT FLEET MANAGEMENT, INC.**
CR 08-0160 SI