IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-00160 SI |
| Plaintiff, | **ORDER GRANTING STATE OF CALIFORNIA'S MOTION TO QUASH SUBPOENA *DECUS TECUM*** |
| v. | |
| JOHN J. COTA, and FLEET MANAGEMENT LTD., | |
| Defendants. | |

On February 11, 2009, the Court heard oral argument on the State of California's motion to quash defendant Fleet Management Ltd.'s ("Fleet") subpoena *decus tecum*. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the motion is GRANTED.

**BACKGROUND**

This case arises from events on the morning of November 7, 2007, when the Cosco Busan container ship allided with the San Francisco Bay Bridge. The United States has charged John Cota, the pilot of the ship at the time of the allision, with two counts of false statement, negligent discharge of a pollutant in violation of the Clean Water Act, and taking migratory birds in violation of the Migratory Bird Treaty Act. The United States has charged Fleet Management, Inc. ("Fleet"), the company that managed the vessel, with three counts of false statement and three counts of obstruction of justice, in addition to violations of the Clean Water and Migratory Bird Treaty Acts. The instant dispute concerns Fleet's application for a subpoena of various documents from a third party, the California Board of Pilot Commissioners, represented in this matter by the State of California.

On December 29, 2008, Fleet filed an *ex parte*, under seal application for third-party subpoenas

of documents from three entities: (1) the California Board of Pilot Commissioners ("BOPC"), (2) the San Francisco Bar Pilots ("SFBP"), and (3) the North Bay Sleep Medicine Institute. This Court approved Fleet's application and two of the entities, the San Francisco Bar Pilots and the North Bay Sleep Medicine Institute, complied with the subpoena and produced documents to the Court.

The subpoena that was delivered to the Secretary of the Board of Pilot Commissioners called for the production of (1) monthly reports from the Port Agent of the SFBP to the BOPC from January, 1993 to January, 2008; (2) all reports to and by the BOPC regarding the grounding of the *M/V Pioneer* on February 20, 2006; (3) results from drug testing performed upon Cota as part of his mandatory periodic exam that were reported to Fran Evans and Alice Evans at the BOPC; (4) all correspondence between the U.S. Coast Guard, the BOPC, and the SFBP regarding a 1999 memorandum that suspended Cota's merchant marine license from November 21, 1999 through January 4, 2000 for a purported DUI conviction. California moved to quash the subpoena and Cota joined the motion. At a hearing on January 30, 2008, the Court ordered Fleet to provide all parties and California with copies of the *ex parte* application Fleet had filed on December 29.

## DISCUSSION

Federal Rule of Criminal Procedure 17 governs the issuance of subpoenas in criminal cases. Rule 17(a) provides that a subpoena must "state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies. The clerk must issue a blank subpoena – signed and sealed – to the party requesting it, and that party must fill in the blanks before the subpoena is served." *See* Fed. R. Crim. Pro. 17(a). Upon the motion of a subpoenaed party, the Court may quash or modify the subpoena if "compliance would be unreasonable or oppressive." *See* Fed. R. Crim. Pro. 17(c)(2).

The discussion of Rule 17(c) in *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) is instructive:

> Rule 17(c) is not as broad as its plain language suggests . . . and it is more narrow in scope than the corollary rules of civil procedure, which permit broad discovery. As the Supreme Court stated in *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951), "Rule 17(c) was not intended to provide an additional means of discovery," but rather "to expedite the trial" by giving a defendant the right to inspect items within his

2

adversary's possession, including items voluntarily provided to the government by third persons. *Id.* at 220-21. The Court in *Bowman Dairy* thus permitted the criminal defendant to use Rule 17(c) collect certain documents that had been withheld by the prosecutor, but it quashed an expansive "catch-all provision" in the subpoena that was "not intended to produce evidentiary materials" but served "merely [as] a fishing expedition to see what may turn up." *Id.* at 221. *See also United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) ("[A] Rule 17(c) subpoena is not intended to serve as a discovery tool, or to allow a blind fishing expedition seeking unknown evidence ....") (citation omitted); 2 Charles Alan Wright, Nancy J. King, Susan R. Klein, and Andrew D. Leipold, *Federal Practice & Procedure* § 274, at 242-43 (noting that "it has always been clear that Rule 17(c) was not intended as a discovery device," and observing that the rule "is limited to evidentiary materials").

In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court held that the proponent of the subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Id.* at 700; *see also United States v. Reed*, 726 F.2d 570, 577 (9th Cir.1984); *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir.1981). Furthermore, even upon a showing that the subpoena seeks relevant, admissible, and specific evidence, a court must consider whether the materials are "otherwise procurable reasonably in advance of trial by exercise of due diligence," whether the proponent can "properly prepare for trial without such production and inspection in advance of trial," and whether "the failure to obtain such inspection may tend unreasonably to delay the trial." *Nixon*, 418 U.S. at 699, 702; *see also Eden*, 659 F.2d at 1381.

Further, a Rule 17(c) subpoena "should be quashed or modified if it calls for privileged matter." 2 *Federal Practice & Procedure* § 275, at 258; *see also United States v. Tomison*, 969 F. Supp. 587, 597 (E.D. Cal. 1997).

This Court therefore must determine whether Fleet has established that the documents it seeks are relevant and admissible, that Fleet's request is sufficiently specific, that Fleet could not reasonably procure the documents by another means, and that the trial would be unreasonably delayed if Fleet were not granted an opportunity to inspect the documents.

### 1. State of California's Motion to Quash

Fleet contends that the evidence in question tends to show that various entities – the BOPC, the U.S. Coast Guard and others – were negligent because they allowed Cota to pilot the Cosco Busan despite knowing that (according to Fleet) Cota had a history of substance abuse and other medical problems. Fleet maintains that the negligence of these third parties was the proximate cause of the allision. According to Fleet, proving that Cota and other entities were the proximate cause of the allision will establish that Fleet was not the proximate cause.

Fleet's analysis is fundamentally flawed. Fleet assumes that if Cota, the U.S. Coast Guard and the BOPC were a proximate cause of the allision, it follows that Fleet was not a proximate cause. This is incorrect. It is possible to have more than one proximate cause of a harm. *See Mitchell v. Gonzales*,

3

1  54 Cal. 3d 1041, 1049 (Cal. 1991) ("In those few situations[] where there are concurrent independent causes, our law provides one cannot escape responsibility for his negligence on the ground that identical harm would have occurred without it. The proper rule for such situations is that the defendant's conduct is a cause of the event because it is a material element and a substantial factor in bringing it about.") (citations omitted); *see also* Restatement, Second, Torts § 439 ("If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's . . . tortious . . . act is also a substantial factor . . . does not protect the actor from liability."). The proper inquiry is whether Fleet's negligence was a "substantial factor" in bringing about the allision. *See* Restatement, Second, Torts § 431(a). Fleet therefore cannot disprove its own negligence simply by demonstrating that the negligence of other actors was another proximate cause of the allision.[1]

At oral argument, Fleet cited *United States v. Hanousek*, 176 F.3d 1116 (9th Cir. 1999), for the proposition that in Clean Water Act cases, a defendant can defend itself by establishing that another actor was a more immediate cause of the harm.[2] In fact, *Hanousek* held that because the *mens rea* requirement for violations of the Clean Water Act is "ordinary negligence," *id.* at 1121, the government establishes causation by proving "beyond a reasonable doubt that the defendant's conduct was both the cause in fact and the proximate cause of the harm. To prove proximate cause, the government must establish that the harm was a foreseeable result of the conduct." *Id.* at 1123-24 (internal citations omitted). The district court had given the following on causation:

---

[1] Proving the existence of a superseding cause is another matter. Fleet has argued in its other papers, but not the instant motion, that it can defend the actions of its crew "by presenting evidence of other intervening or superseding causes to the allision which break the chain of proximate causation." Fleet Opp., at 4. [Docket No. 226] Fleet is correct that if the negligence of another were a "superseding cause," Fleet would not be not liable for its negligent acts that preceded the superseding cause. *See Farr v. NC Machinery Co.*, 186 F.3d 1165, 1169 (9th Cir. 1999) ("A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.") (citing Restatement, Second, Torts § 440). The relevant time period, however, for considering whether a third-party's act constituted a superseding cause is *after* Fleet's negligence. *Id.* at 1168 ("The word 'later' means that the superseding intervening cause has to occur after the defendant's negligence."). In any event, the Court need not consider this issue because Fleet represented at oral argument that it did not subpoena the documents pursuant to a superseding cause theory of defense.

[2] Fleet is charged with negligent discharge of a pollutant in violation of the Clean Water Act, 33 U.S.C §§ 1319(c)(1)(A), 1321(b)(3).

4

> In order to prove that a particular defendant caused the negligent discharge of oil as alleged in Count 1 of the indictment, the government must prove beyond a reasonable doubt that:
> 1. The particular defendant's conduct had a direct and substantial connection to the discharge; and
> 2. The discharge would not have occurred but for the particular defendant's conduct.

*Id.* at 1124. The Ninth Circuit held that this instruction was adequate because "[i]t required the jury to find that Hanousek's conduct had a 'direct and substantial connection' to the discharge of oil." *Id.* As discussed above, it is possible for multiple actors to be both a cause in fact and a substantial cause of the oil spill. *Hanousek* establishes that, contrary to Fleet's contention, Fleet cannot exculpate itself merely by proving that there was another proximate cause of the allision.

Fleet also implies that once Cota came aboard the Cosco Busan, the crew of the ship was absolved on all its duties. Fleet cites from several sources – an administrative proceeding of the U.S. Coast Guard,[3] two Supreme Court cases from the nineteenth century,[4] and a treatise on piloting[5] – that expound on the responsibilities of the pilot as "temporary master" of a ship. Fleet appears to argue that under maritime law pertaining to pilots, all navigational duties fell to Cota alone.[6] If Fleet is correct as a matter of law about the role of the pilot, this contention would be better directed at the indictment. The Second Superseding Indictment alleges that Fleet was negligent in one or more of the following ways: failing to navigate an allision-free course, failing to prepare and review an adequate passage plan, failing to conduct an adequate review of the official navigational charts, departing in heavy fog, proceeding at an unsafe speed, failing to use the vessel's radar, failing to read and operate the vessel's electronic chart during the final approach, failing to adequately use the vessel's paper charts, failing to verify the vessel's position, failing to post adequate lookouts, and failing to notify the pilot when the

---

[3] *In re M/V Skava*, 2001 AMC 2071 (2001).

[4] *Cooley v. Bd. of Wardens for the Port of Philadelphia*, 53 U.S. 299 (1851); *The Oregon*, 158 U.S. 186 (1895).

[5] Committee on Advances in Navigation and Piloting, *Minding the Helm*: *Marine Navigation and Piloting* 81 (1994).

[6] The Court notes that in its quotation from *In re M/V Skava*, Fleet omitted the following important sentence from the Coast Guard's discussion of the relationship between the pilot and the ship's crew: "There is no question that the master of a vessel is in command of that vessel and is at all times ultimately responsible for her safety." *Id.* at *5.

vessel went off course. *See* Second Superseding Indictment, at Count Three (B-L). If Fleet is correct that as a matter of law it had no duty to perform these tasks, there is no basis for allegations B through L in Count Three. This argument does not advance Fleet's proximate cause theory.

In sum, Fleet seeks documents to prove that there was another proximate cause of the allision. The documents are therefore irrelevant because this is not a viable theory for Fleet's defense. California's motion to quash the subpoena is GRANTED. The Court makes no decision at this time as to whether documents pertaining to Cota's acts and physical condition on November 7, 2007 could be relevant for another purpose and therefore subject to a subpoena under a different theory.

**2.      Subpoenas Served on Other Third Parties**

As discussed above, the SFBP and the North Bay Sleep Medicine Institute have complied with Fleet's subpoenas and produced documents to the Court. The Court will keep these documents until such time as Fleet demonstrates to the Court that their production would comply with the requirements of Rule 17.

**IT IS SO ORDERED.**

Dated: 2/17/09

SUSAN ILLSTON
United States District Judge